UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RON HILL, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: C08-966 CRD <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Ron Hill appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("SSA" or the "Act"), 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-seven-year-old man, thirty-three years old at the alleged disability onset date. He does not have a high school education. Plaintiff applied for SSI in October 2002, alleging disability since January 1995 due to depression, anxiety, and gout. His claim was denied initially and upon reconsideration, and he timely requested an ALJ hearing.

A *de novo* hearing before ALJ Bauer was held on March 22, 2005 that resulted in a denial of benefits. Plaintiff requested review by the Appeals Council and review was denied. Plaintiff

ORDER - 1

then appealed to this Court and the parties stipulated to a remand to the ALJ for further proceedings.

On November 13, 2007, ALJ Bauer held a second hearing. The ALJ heard testimony from two witnesses: a vocational expert and Plaintiff, who was represented by counsel, George Fields, Esq. Administrative Record ("AR") at 242-78. The ALJ rendered an unfavorable decision on March 25, 2008, again finding Plaintiff not disabled. Plaintiff requested review by the Appeals Council and review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On June 20, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Mr. Hill bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)

(internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2002. AR 285, Finding 1. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case the ALJ found Plaintiff has the severe impairment of gout. AR 286, Finding 2. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. In this case the ALJ found that Plaintiff's impairment did not meet or equal the requirements of any listed impairment. AR 291, Finding 3.

---

[1]Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case determined Plaintiff retained the RFC to perform "medium work." AR 291, Finding 4. The ALJ next found that Plaintiff did not have any past relevant work. *Id.* at 296, Finding 5.

If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff could perform medium unskilled work limited to simple repetitive tasks with occasional public contacts, and, based on vocational expert testimony, determined that Plaintiff retained the capacity to work at jobs such as laundry worker and kitchen helper. AR 298. The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA. *Id*.

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in evaluating Plaintiff's severe impairments?
2. Did the ALJ err in assessing Plaintiff's credibility?
3. Did the ALJ err in questioning the vocational expert?

Dkt. No. 9 at 23-24.

## VI. DISCUSSION

This case was brought before this Court in July 2006 and the parties stipulated to a remand for further proceedings. The Appeals Council issued a remand order directing the ALJ to correct the decision in five main areas: 1) further consider the opinions of Drs. Parker, Suh,

Glisky, West, Fisher, and Peterson; 2) further evaluate the mental impairments using the proper SSA evaluation technique in all functional areas; 3) provide germane reasons for discounting third party testimony of Plaintiff's ex-wife and ex-girlfriend; 4) further consider Plaintiff's RFC; and 5) obtain supplemental evidence from a vocational expert. AR 305. Plaintiff appeals on all issues except the third party testimonies. In the ALJ decision now under review, the ALJ incorporated by reference the portions of the first decision that were not in error. AR 284-85. In this decision, the ALJ concluded that the new evidence and a reconsideration of the issues as directed by the Appeals Council did not change the decision and did not warrant an award of benefits. This Court affirms the ALJ's decision based on resolution of the following issues brought by Plaintiff.

     *A.     The ALJ did not err in assessing Plaintiff's severe impairments.*

Plaintiff asserts the ALJ erred in failing to properly assess the opinions of examining physicians Robert Parker, Ph.D., P.C., San Suh, M.D., Martha Glisky, Ph.D., and Raymond West, M.D., and the two state agency evaluators, Alex Fisher, Ph.D., and Gerald Peterson, M.D. Plaintiff also disputes the ALJ's findings with respect to the newer evaluations by Drs. Goldberg, Virji and Ankuta. Plaintiff argues the ALJ improperly weighed each of their opinions in concluding that he does not have a severe mental impairment. Dkt. 9 at 10. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor may be upheld. *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

### Dr. Parker

In 2002, Dr. Parker evaluated Plaintiff and diagnosed him with depression and anxiety in moderate and marked levels, with limitations in performing tasks, exercising judgment, making decisions, interacting in public, maintaining appropriate behavior, and appropriately relating to coworkers, and supervisors. AR 148-49. The ALJ gave "no weight" to Dr. Parker's opinion. AR 288. Plaintiff argues that it was error to do so because the ALJ's reasons for dismissing the opinion are incorrect.[2] The ALJ gave "no weight" to Dr. Parker's 2002 psychological evaluation, citing the following reasons: the opined limitations are unsupported by objective medical evidence and in conflict with Plaintiff's actual level of mental functioning; the limitations were expected to last for only 6 months; Dr. Parker examined Plaintiff on only one occasion which was not for treatment but for obtaining benefits; and psychological testing suggests exaggerated symptoms and limitations and are therefore unreliable. AR 288-89.

Although a review of Dr. Parker's assessment indicates the ALJ's comments are factually accurate, the Court questions the legitimacy of several of the ALJ's stated reasons. Absent contradictory evidence, the finding that the opinion is unsupported by objective medical evidence is not convincing; Dr. Parker is an examining physician, presumably presenting just such objective medical evidence in the form of the evaluation he conducted. That Dr. Parker examined Plaintiff for benefits evaluation rather than treatment is likewise not convincing; such is the very nature of the SSA's and the state agency's disability benefits determination process.

The ALJ's finding that Plaintiff's "actual level of functioning" is in conflict with Dr. Parker's opinion is circular reasoning absent evidence that he functions at a higher mental level than Dr. Parker opined. The ALJ cites such evidence, noting Plaintiff's daily functioning as being social, having friends and at one time a girlfriend, which the ALJ found inconsistent with Plaintiff's claim of social isolation due to depression and anxiety. AR 294. That the opined limitations were expected to last only 6 months and that Dr. Parker concluded his psychological

---

[2] The Court notes that the Appeals Council found that the ALJ's first decision discussed Dr. Parker's evaluation but did not sufficiently address the limitations assessed and did not accommodate them in the RFC finding. In the second decision, the ALJ again does not address specific limitations, but instead gives reasons for their dismissal.

ORDER - 6

test results may reflect symptom and limitation exaggeration, are also reasons supported by the record and do not support a severe impairment finding. The Court finds these latter reasons clear and convincing and supported by substantial evidence in the administrative record. *Magallanes*, 881 F.2d at 751-55. Accordingly, the ALJ's decision to give Dr. Parker's 2002 evaluation no weight is not in error.

Dr. Suh

In 2003, examining physician Dr. Suh evaluated Plaintiff, noting depression and anxiety, which he opined would be improved with "mood stabilizer treatment" but also noted that Plaintiff feared being on antidepressant medication, and that due to "recent stressors in his life and his mother having passed away three years ago, his ability to maintain consistent gainful employment at this time is markedly limited." AR 159. The ALJ gave "little to no weight" to Dr. Suh's evaluation because "she did not indicate how much of his limitations were related to his history of polysubstance abuse" and because "she did not acknowledge that his inability to maintain employment during the past three years could have been due to the fact that he was in prison for drug use and activity." AR 289. The ALJ also found significant that in the examination with Dr. Suh, Plaintiff,

> …[D]escribed adequate activities of daily living and social functioning and his mental status examination was within normal limits, certainly not reflecting marked or serious, or even moderate, symptoms or difficulties in his functioning. Dr. Suh obviously relied quite heavily on the subjective report of symptoms and limitations provided by claimant, and seemed to uncritically accept as true most, if not all, of what he reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of claimant's subjective complaints. The internal inconsistencies undermine the reliability of this evaluation."

*Id.* Plaintiff argues that Dr. Suh was aware of his drug and incarceration history (AR 157) and that the state agency evaluators, Drs. Fisher and Peterson, adopted many of her findings (AR 166, 182). Regardless, the Court finds that the ALJ's reasoning that Dr. Suh did not address the impact of prior substance abuse and prison on Plaintiff's inability to maintain employment for the period discussed, and the inconsistent report of his seemingly normal activities of daily living clear and convincing and supported by substantial evidence in the administrative record. The

ALJ was directed by the Appeals Council to give specific reasons for rejecting Dr. Suh's conclusion regarding employment (AR 303) and the ALJ did so. Accordingly, the ALJ's decision to give Dr. Suh's evaluation reduced weight is not in error.

### Dr. Glisky

In 2005, examining physician Dr. Glisky performed a psychological evaluation on Plaintiff. The ALJ gave "little to no weight" to Dr. Glisky's evaluation, citing the following reasons: (1) Dr. Glisky admitted the evaluation was based primarily on Plaintiff's self-reported history and on reviewing records by Drs. Suh and Parker, which were also discounted; (2) the assigned GAF score of 50 is inconsistent with Plaintiff's admitted activities of daily living; (3) Plaintiff was socially appropriate during the evaluation, demonstrated adequate verbal expression and comprehension, and could adequately sustain attention; and (4) the Test of Memory and Malingering indicated that:

> "[S]cores suggest that Mr. Hill was not putting forth a true and effortful performance, and suggests that he was intentionally performing below his capabilities." She added that his scores on IQ testing also "cannot be interpreted or considered valid due to his intentionally poor performance on the malingering measure." She concluded that the claimant's performance on the entire evaluation cannot be interpreted as valid. Thus, given the evidence of intentional exaggeration and malingering, this evaluation clearly cannot be used as evidence of a "severe" mental impairment.

AR 289 (citations to administrative record omitted). Plaintiff argues parts of Dr. Glisky's evaluation are valid despite the doctor's opinion that he is malingering; however, the ALJ's reasoning is factually supported by Dr. Glisky's report. *See* AR 224-33. The ALJ's reasoning is clear and convincing and supported by substantial evidence in the administrative record, in compliance with the Appeals Council's order. Accordingly, the ALJ's decision to give Dr. Glisky's evaluation reduced weight is not in error.

### Dr. West

In 2003, Dr. West examined Plaintiff and opined he could perform a light level of work and noted he had some depression. AR 164. The ALJ gave Dr. West's opinion regarding depression "no weight" because Dr. West examined Plaintiff for physical complaints, not mental, which the ALJ found is outside his area of medical expertise; because the records Dr. West

reviewed did not mention psychological problems, and because there is nothing in Dr. West's report to suggest psychological difficulties during the Dr. West's examination. AR 290. The ALJ concluded that Dr. West's comment, "[t]here does appear to be some depression. It is not unlikely that a major portion of his problem relates to depression and indeed, he admits that this is the case" (AR 164) is based on Plaintiff's subjective reporting and is speculative in nature. AR 290. The ALJ therefore concluded Dr. West's comment regarding depression should receive no weight based on the lack of objective medical findings and Plaintiff's already discredited subjective reporting of symptoms. *Id.* The Court disagrees with the ALJ's reasoning that Dr. West is not qualified to assess psychological impairments because it is outside his area of expertise. However, based on a review of Dr. West's report, the Court finds the ALJ's reasoning regarding the lack of objective medical evidence from Dr. West and Plaintiff's unsupported subjective complaints, supported by substantial evidence; therefore, the ALJ's decision to give Dr. West's comment regarding depression no weight is not in error.

<u>Dr. Fisher and Dr. Peterson</u>

The Appeals Council found the ALJ did not adequately evaluate the opinions of the two state agency psychological consultants, Drs. Peterson and Fisher, because their "moderate" restriction rating in the area of maintaining concentration, persistence or pace was not addressed. AR 304. Plaintiff argues that on remand the ALJ found the state agency physicians erred by relying on the opinions of Drs. Suh and Parker but the ALJ failed to provide sufficient reasons for discounting the opinions of Drs. Suh and Parker. Dkt. 9 at 16. The ALJ's decision notes that the doctors found the moderate restriction but gives their opinion "little to no weight" because they are not treating or examining physicians and because the opinion is based on the opinions of Drs. Suh and Parker, which the ALJ discounted as discussed above. AR 289-90. It is well-settled law that an ALJ must evaluate the opinion of a nonexamining state-agency doctor. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (discussing the weight owed a nonexaminer's opinion). Opinions from nonexamining medical sources are to be given less weight than treating or examining doctors; however, an ALJ must always evaluate the opinion of such a source and may not simply ignore it. *Id.* In other words, an ALJ must evaluate the opinion of a

ORDER - 9

nonexamining source and explain the weight given to it. SSR 96-6p 1996 WL 374180, at *2 (S.S.A.). Here, the Court finds the weight assigned to the state agency physicians' opinion is not in error because the ALJ permissibly gave less weight to the nonexamining physicians and gave reduced weight because the opinions were based on other doctors' opinions which were reasonably discredited as discussed above. The ALJ's reasoning is based on clear and convincing reasons supported by substantial evidence in the record; therefore, the ALJ did not err in this regard.

<u>Dr. Goldberg</u>

After the ALJ's first decision, nonexamining physician Dr. Goldberg assessed Plaintiff by reviewing his records. AR 570-88. Plaintiff argues that although the ALJ appears to have accepted Dr. Goldberg's general limitations by limiting him to "simple work" he failed to address the weight given to Dr. Goldberg's opinion that he suffers from organic mental disorder, affective disorder, anxiety disorder, personality disorder and substance addiction disorder (AR 570), and whether these disorders meet or equal a listed impairment at step three. Dkt. 9 at 16-17. The ALJ discussed Dr. Goldberg's opinion in detail including the specific diagnoses. *See* AR 287. The ALJ noted that in February 2006 the evaluator opined that Plaintiff could maintain the pace of simple work with limited public contact, and affirmed the results of the assessment in May 2006. AR 287. Based thereon, the ALJ found Plaintiff's RFC to include simple work with limited public contact. AR 291. That the ALJ did not specifically discuss the evaluator's opinion regarding the specific disorder diagnoses is, at most, harmless error because the ALJ incorporated the corresponding opined limitations into the RFC. Plaintiff's assertion that the ALJ similarly erred in not discussing whether the diagnoses met or equaled listings at step three is also not reversible error. After a thorough discussion regarding Plaintiff's impairments, the ALJ concluded at step three that, [t]he new evidence submitted on remand does not alter this conclusion…claimant's mental impairments are non-severe and therefore, he has only mild restrictions of activities of daily living, mild difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, and pace." AR 291. The ALJ's reasoning

is supported by substantial evidence in the record; therefore, the ALJ did not err in assessing Dr. Goldberg's opinion.

Dr. Virji

Plaintiff argues the ALJ did not provide specific reasons for not properly crediting the nonexamining opinion of Dr. Virji, who found Plaintiff to be limited to work at the light exertional level with postural limitations (AR 186-87). Dkt. 9 at 17. The ALJ referenced his first decision which he incorporated into the second decision where it was not reversed by the Appeals Council, and noted that, "the record simply does not contain a valid treating or examining source opinion indicating that the claimant is disabled or has limitations greater than a light residual functional capacity." AR 296. The record reflects that Dr. Virji found Plaintiff capable of working at the light exertional level with some postural limitations. The ALJ found Plaintiff had the RFC for medium work, and although he did not address the specific reasons for finding a greater physical RFC than Dr. Virji found, the Court finds that based on Dr. Virji's assessment, it is harmless error because Dr. Virji also noted that Plaintiff used "no assistive device, remarkably well built and muscular, motor strength good, sensation intact." AR 186. Given this and other physical evaluations in the record, it is reasonable that the ALJ would find capable of medium physical work. *See e.g*. AR 590. The Court also notes the Appeals Council did not find error in the ALJ's physical assessment but with the mental RFC assessment. Thus, the Court finds the ALJ's physical RFC assessment is based on substantial evidence in the record and not in error.

Dr. Ankuta

Plaintiff argues that while the ALJ accepted Dr. Ankuta's consultative opinion that he could "tolerate the emotional stress of competitive work", the ALJ did not address the inconsistency that Dr. Ankuta also diagnosed major depression and assigned a GAF of 50. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ discussed Dr. Ankuta's opinion in detail (AR 286-87) noting that the doctor opined he demonstrated limited ability to think abstractly, that "his memory was not adequate for

recalling simple or complex instructions at work *if he was responding to the best of his ability*", but that he could maintain the pace of simple manual work and tolerate the emotional stress of competitive work." AR 287 citing AR 623, emphasis in ALJ's decision. Thus, Dr. Ankuta's opinion is not internally inconsistent, but explained in the narrative he provided. The Court finds the ALJ's reliance on Dr. Ankuta's opinion supported by substantial evidence in the administrative record and therefore not in error.

   *B.     The ALJ did not err in assessing Plaintiff's credibility.*

Plaintiff argues that the ALJ's adverse credibility finding is not supported by substantial evidence. Dkt. 9 at 18-19. Plaintiff's argument in this regard is based on his argument that the physicians' opinions should be weighed differently; that there is no indication of drug seeking behavior; there is no legitimate issue of secondary gain; his daily activities do not prove he is able to work; and that the ALJ did not properly account for his mental impairments. Dkt. 9 at 18-19. Absent evidence of malingering, the ALJ can only reject Plaintiff's testimony regarding the severity of his symptoms by giving "specific, clear and convincing reasons" for the rejection. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036; *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59. In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d 821, 834 (9th Cir. 1995). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

As discussed above, the ALJ did not err in weighing the physician's opinions and concluding Plaintiff does not have a severe mental impairment preventing him from working. The ALJ also noted a "concern of drug seeking behavior as the claimant often alleged that he lost his medications and made multiple early refill requests. He also became belligerent when questioned about his early medication refills and his counselor opined that his behavior and fear of giving a urine specimen 'raises concerns about [Plaintiff's] secondary gains or possible drug seeking/drug use.' Also, he cancelled or failed to show up for appointments on a number of occasions." AR 293. An examination of the record reflects the ALJ's assessment is factually accurate and based on substantial evidence in the record.

The ALJ discussed Plaintiff's suspected motivation for secondary gain at length, citing multiple instances of suspected malingering that supports the ALJ's conclusion that his "pattern of behavior highly suggests that his focus is on obtaining monetary benefits on which to live rather than on obtaining treatment, improving his symptoms and limitations, and returning to work", including Plaintiff's own reports to providers, a financial incentive related to indebtedness for child support, a poor work history, and that his state benefits were discontinued based on suspected malingering. AR 294. The Court finds the ALJ's reasoning in this regard is based on substantial evidence in the administrative record.

Plaintiff also disputes the ALJ's conclusion regarding his daily activities; however, the reasons cited by the ALJ in this regard are again supported by substantial evidence in the record. The ALJ noted that "he watches television, goes for walks, goes to the library, and looks at sports books and magazines and also spends time at coffee shops" and that he admitted that he was able to weight lift, go to the gym, and make friends and at one time had a girlfriend, although he alleges social isolation." AR 294. The ALJ therefore concluded that such activities demonstrate Plaintiff is "engaging in a normal level of daily activity, social interaction, and activities that require concentration." AR 295. The Court therefore finds no error. In sum, the Court finds the ALJ's overall credibility assessment is supported by clear and convincing reasons, based on substantial evidence, and is free of legal error. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to great

deference); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

      *C.      The ALJ did not err in questioning the vocational expert.*

Plaintiff contends that the ALJ erred at step five because the hypothetical question presented to the vocational expert ("VE") was incorrect because it did not include Plaintiff's limitations as opined by physicians. Dkt. 9 at 20-21. Plaintiff bases this argument on assigning error to the RFC determination as discussed above. The ALJ found that Plaintiff could perform medium work, with a limitation to simple repetitive tasks[3] and occasional public contacts. AR 291. Based on the vocational expert testimony in response to a hypothetical question involving a person with those limitations, the ALJ concluded Plaintiff is capable of working as a kitchen helper and a laundry worker. As addressed above, this Court finds the RFC determination is based on substantial evidence and not in error; thus, the hypothetical questions asked of the VE based on that RFC were also not in error. The ALJ appropriately used a vocational expert to find examples of medium work jobs Plaintiff could perform, based on the RFC and limitations he assigned. Where the ALJ's findings are based upon substantial evidence in the record, the Commissioner's decision to deny benefits will not be reversed. *Bayliss*, 427 F.3d at 1214.

Plaintiff argues in his Reply brief that the ALJ confused "simple, routine tasks" (AR 689) with "simple, repetitive tasks" (AR 291) but that the kitchen helper and laundry worker jobs require "repetitive temperaments" according to the VE (AR 695). The Court finds the descriptions were used interchangeably by the ALJ and VE and that no apparent confusion existed at the hearing with respect to the VE's testimony. Plaintiff further argues that the VE's testimony is not consistent with the Dictionary of Occupational Titles ("DOT") because the kitchen helper and laundry worker jobs are not "repetitive in their temperaments" according to the DOT and that the ALJ was required by SSR 00-4p to clarify any departure the VE made from the DOT. Dkt. 9 at 21; Dkt. 12 at 11.

SSR 004-4p provides in relevant part, "[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about

any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will: ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." An ALJ may not rely on the testimony of a vocational expert without first inquiring whether the VE's testimony conflicts with the DOT, but that harmless error occurs where (1) there is no conflict; or (2) if the VE provides sufficient support for the conclusion so as to justify any potential conflicts. *Massachi v. Astrue*, 486 F.3d 1149, 1150-54 (9th Cir. 2007). Plaintiff here argues that a conflict exists because the VE testified the jobs required "repetitive temperaments", and Defendant argues the DOT describes both jobs as "repetitive." The Court finds that even assuming this difference exists, such distinction is not material and did not result in confusion or any harmful departure from the DOT as presented by the vocational expert.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case DISMISSED.

DATED this 17th day of February, 2009

_____
Carolyn R. Dimmick
United States District Judge